UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMALIA D., an Individual, | Case No.: 2:18-09288 ADS |
| Plaintiff, | |
| v. | MEMORANDUM OPINION AND ORDER |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.  **INTRODUCTION**

Plaintiff Amalia D.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her applications for a period of disability and disability insurance benefits ("DIB"),

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] On June 17, 2019, Saul became the Commissioner of Social Security.  Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

and supplemental security income ("SSI").  Plaintiff contends that the Administrative Law Judge ("ALJ") improperly considered a medical opinion, fashioned a residual functional capacity ("RFC") that is not supported by substantial evidence, and improperly assessed her subjective testimony.  For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II.   FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal.  Prior to filing her applications for social security benefits, Plaintiff worked as a packer for a warehouse from 2001 to 2002, a waitress from 2003 to 2004, and then a certified nurse assistant ("CNA")/caregiver from 2004 to August 2005.  (Administrative Record "AR" 54, 389-92, 433).  She stopped working on August 11, 2005, following an accident at work.  (AR 38-39, 375).  Her condition became severe enough to keep her from working on December 31, 2011, the alleged onset date.  (AR 15, 350, 357, 406, 413). She alleged she can no longer perform any work due to back and arm pain, problems with sitting and lifting, and depression.  (AR 42, 375, 405, 408, 415-16).  As further explained below, she later amended her alleged onset date to August 22, 2012.  (AR 43).

In August and December 2014, State Agency reviewing physician Dr. S. Garcia concluded Plaintiff could perform a reduced range of light work, with four hours of standing/walking per day, which was affirmed upon reconsideration.  (AR 145-46, 176-77).

On August 16, 2016, Dr. Paul Malabanan completed a "Physical [RFC] Questionnaire" for Plaintiff.  (AR 708-11).  Dr. Malabanan indicated he had been treating Plaintiff since 2013 and diagnosed her with fibromyalgia and idiopathic scoliosis.  (AR 708).  Dr. Malabanan opined that Plaintiff could sit or stand for no more

than 30 minutes at a given time, and could sit, stand or walk for no more than two hours each per workday.  (AR 709-10).  He found that Plaintiff would need a job that allows shifting positions at will, and that she would frequently need to take unscheduled breaks of 30 minutes.  (AR 710).  Dr. Malabanan found that Plaintiff could frequently lift less than 10 pounds, but never lift 10 pounds or over.  (AR 710).  Dr. Malabanan opined that Plaintiff would likely be absent from work more than four days per month.  (AR 711).

At a March 2017 administrative hearing, medical expert Dr. Thomas Maxwell testified Plaintiff could perform a range of sedentary work.  (AR 50-51).  Dr. Maxwell explained that he did not adopt Dr. Malabanan's less-than-sedentary RFC because his examination "[didn't] really show neurological deficits."  (AR 51).  Dr. Maxwell further explained that a medical exhibit[3] showed Plaintiff's gait was normal, her motor strength was normal, and that her range of motion was full although it did acknowledge pain on movement.  (AR 51).  Dr. Maxwell also noted that Dr. Malabanan sent Plaintiff to a neurosurgeon for evaluation and the neurosurgeon's opinion was that there was no need for surgery and no neurological deficit.  (AR 51).  Dr. Maxwell noted that Dr. Malabanan found Plaintiff had failed physical therapy and her pain was significant, but in Dr. Maxwell's opinion those findings did not correlate with the mild scoliosis and the lack of neurological findings.  (AR 51).

Also at the March 2017 hearing, Plaintiff testified she hasn't worked since 2005 because of an accident, and because of her depression and physical ailments.  (AR 42).  Dr. Malabanan has treated her for problems with her back.  (AR 42, 44-45).  He prescribes her medication and has provided therapy.  (AR 43).  He referred her to a

---

[3] Dr. Maxwell refers to exhibit 11F, which are some of Dr. Malabanan's treatment notes. (AR 52, 702-07).

spine specialist and a rheumatologist, but she only saw an ophthalmologist once.  (AR 46).  She also sees a psychologist and a psychiatrist.  (AR 44).

Plaintiff further testified that she lives in an apartment with her four sons, ages 24, 20, 17, and 4.  (AR 39-40).  Her sister-in-law lives nearby and helps take care of the children and the laundry.  (AR 40-41, 45).  Her sister-in-law and her 20-year-old son prepare the meals because it's "too much work" for Plaintiff.  (AR 41, 45).  Her sister-in-law and her son do the grocery shopping and drive her, and her sister-in-law and the kids do the dishes.  (AR 41).  Plaintiff doesn't do anything; she just watches TV and reads.  (AR 41).  Plaintiff can shop for "emergency stuff" like milk, tortillas, and other food items.  (AR 46).  When her youngest was a baby, she could hold him, but only when she was sitting and someone handed him to her.  (AR 47).  Plaintiff can dress herself and shower.  (AR 47).  Plaintiff can only walk 30 minutes and then she must stop for 10 minutes for "a breather" and because she starts having back and right leg pain, and her feet become stiff.  (AR 45).  She does not go to her son's sports activities because she experiences anxiety when she's around a lot of people, causing her to cry and feel pressure.  (AR 48).  But, if someone is available to take her, "[o]f course" she will go because that makes her son happy.  (AR 48).

In June 2018, consultative examining physician Dr. Afra completed a "MEDICAL SOURCES STATEMENT OF ABILITY TO DO WORK-RELATED ACTIVITIES (PHYSICAL)".  (AR 632-37).  He concluded Plaintiff could perform a range of light work.  (AR 632-37).  Specifically, Dr. Afra found that Plaintiff could lift or carry up to 10 pounds frequently and up to 20 pounds occasionally.  (AR 632).  He also found that Plaintiff could sit, stand or walk up to six hours each per workday.  (AR 633).

III.   **PROCEEDINGS BELOW**

A. **Procedural History**

Plaintiff was previously found disabled and granted DIB and SSI benefits as of August 2005.  (AR 15).  Later, a continuing disability review was initiated and Plaintiff was found no longer disabled as of March 2011.  (AR 15).  She appealed that determination and was still found no longer disabled in an August 21, 2012 decision by ALJ Sherwin Biesman.  (AR 15, 113-23).

Plaintiff then protectively filed new applications for DIB and SSI on April 22, 2014, alleging disability beginning December 31, 2011.  (AR 15, 349-65).  Plaintiff's applications were denied initially on September 5, 2014 (AR 165-66), and upon reconsideration on December 31, 2014 (AR 197-98).  A hearing was held before ALJ Gail Reich on March 15, 2017.  (AR 33-59).  Plaintiff, represented by counsel, appeared and testified at the hearing, as did medical expert Dr. Maxwell, medical expert Glenn Griffin, PhD., and vocational expert Elizabeth Ramos.  (Id.).  At the hearing, Plaintiff amended her alleged onset date to August 22, 2012, the first day after the prior ALJ decision, effectively withdrawing her DIB claim.  (AR 16, 43-44, 438).

On April 28, 2017, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act ("SSA").[4]  (AR 15-27).  The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on October 26, 2018.  (AR 1-6).  Plaintiff filed this action in District Court on October 30, 2018, challenging the ALJ's decision.  [Docket ("Dkt.") No. 1].

---

[4] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A).

On April 5, 2019, Defendant filed an Answer, as well as a copy of the Certified Administrative Record.  [Dkt. Nos. 18, 19].  The parties filed a Joint Submission on October 7, 2019.  [Dkt. No. 26].  The case is ready for decision.[5]

### B.  Summary of ALJ Decision After Hearing

In the decision, the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the SSA.[6]  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  At **step one**, the ALJ found that Plaintiff had not engaged in substantial gainful activity since December 31, 2011, her originally alleged onset date.  (AR 18).  At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) lumbar spine degenerative disc disease; (b) chronic pain syndrome/fibromyalgia; and (c) depressive disorder.  (Id.)  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925[,] and 416.926)."  (AR 21-22).

---

[5] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment.  [Dkt. Nos. 11, 16].

[6] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.  Step four: Is the claimant capable of performing past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. § 404.1520); see also Ford v. Saul, 950 F.3d 1141, 1148-48 (9th 2020).

The ALJ then found that Plaintiff had the RFC[7] to perform a reduced range of sedentary work as defined in 20 C.F.R. §§ 404.1567(a), 416.967(a) [8] involving:

> Lifting/carrying 10 lbs., standing/walking 4 hours total per 8-hour workday, sitting 6 hours total per 8-hour workday, no climbing/working at heights/working around hazardous conditions/machinery, occasional postural movements, occasional pushing/pulling with her lower extremities, performing simple, repetitive tasks, performing detailed or complex tasks no more than frequently, and having occasional interactions with co-workers, supervisors, and/or the public in a work setting.

(AR 22, 25).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff is unable to perform her past relevant work as a CNA (Dictionary of Occupational Titles ("DOT") 355.674-014).  (AR 25).

At **step five**, the ALJ found that at age 42, Plaintiff was defined as a "younger individual age 18-44" on the alleged onset date, and that Plaintiff subsequently changed age category to a "younger individual age 45-49," both within the meaning of 20 C.F.R. §§ 404.1563, 416.963.  (AR 25).  The ALJ further found that Plaintiff has a limited education but is able to communicate in English.  (AR 26).  The ALJ next found that

---

[7] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[8] "Sedentary work" is defined as

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. §§ 404.1567(a), 416.967(a); see also Casey H. v. Berryhill, 2018 WL 5629303, at *3 n.3 (C.D. Cal. Oct. 29, 2018).

transferability of job skills was not material to the determination of disability because

using the Medical-Vocational Rules as a framework supports a finding of "not disabled,"

whether or not Plaintiff has transferable skills.  (AR 26).  Finally, the ALJ found that,

considering Plaintiff's age, education, work experience, and RFC, Plaintiff could perform

other jobs that exist in significant numbers in the national economy.  (AR 26).  The ALJ

accepted the vocational expert's testimony that Plaintiff would be able to perform the

representative occupations of: electronics bonder (DOT 726.685-066); touch up

screener (DOT 726.687-110); and assembler (DOT 739.684-094).  (AR 26-27).  As such,

the ALJ found that P5aintiff was "not under a disability," as defined in the SSA, from

December 31, 2011, through the date of the decision, April 28, 2017.  (AR 27).

## IV.   ANALYSIS

### A.  Issues on Appeal

Plaintiff raises three issues for review: whether the ALJ (1) gave sufficient weight

to the opinion of Dr. Malabanan; (2) properly determined an RFC that was consistent

with her step-three finding and supported by substantial evidence; and (3) properly

assessed Plaintiff's subjective testimony.  [Dkt. No. 26, p. 3].

### B.  Standard of Review

A United States District Court may review the Commissioner's decision to deny

benefits pursuant to 42 U.S.C. § 405(g).  The District Court is not a trier of the facts but

is confined to ascertaining by the record before it if the Commissioner's decision is

based upon substantial evidence.  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014)

(District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v.

Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)).  A court must affirm an ALJ's findings of

fact if they are supported by substantial evidence and if the proper legal standards were

applied.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001).  An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence.  Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion."  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted).  "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld."  Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").  However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely."  Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity."  Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. **The ALJ Properly Considered the Treating Physician Opinion**

Plaintiff contends that the ALJ did not give sufficient weight to Dr. Malabanan's opinion as a treating physician.  [Dkt. No. 26, pp. 3-5, 9-10].

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence.  20 C.F. R. §§ 404.1527(b), 416.927(b).  "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant."  Lester, 81 F.3d at 830 (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)).  Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons.  Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence."  Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).

 "Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion."  Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882).  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings."  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

1

2

2.    The ALJ Gave Specific and Legitimate Reasons, Supported by
Substantial Evidence, for Assigning Less Weight to the Treating
Physician Opinion

3    Preliminarily, the Court notes the ALJ found that Plaintiff was limited to less

4   than the full range of sedentary work.  (AR 22).  Accordingly, she necessarily credited

5   aspects of Plaintiff's subjective complaints and the findings of the treating, examining,

6   and reviewing physicians.  To the extent the ALJ rejected Dr. Malabanan's opinion that

7   Plaintiff was fully disabled, she complied with Magallanes and provided specific and

8   legitimate reasons for doing so that are supported by the entire record.

9    The ALJ assessed Dr. Malabanan's opinion as follows:

10   While [Plaintiff] treated with Dr. Malabanan during 2016, the undersigned
rejects his August 2016 evaluation effectively finding [Plaintiff] disabled

11   from all work activity.   The undersigned notes this assessment is
inconsistent with Dr. Malabanan's own mild clinical findings, the mild

12   clinical findings of Dr. Afra and elsewhere in the record, and the lack of
significant treatment associated with [Plaintiff]'s reported pain complaints.

13
The undersigned notes that Dr. Afra, the State Agency, and Dr. Maxwell all

14   effectively found [Plaintiff] capable of performing sedentary work activity
with certain other postural and environmental restrictions, which are

15   generally consistent with the available medical evidence, clinical and
diagnostic findings and degree of treatment, as well as give [Plaintiff] some

16   benefit of the doubt in terms of her complains of limited walking/standing
capacity.

17   (AR 23-24).

18    First, the ALJ properly determined that Dr. Malabanan's opinion conflicted with

19   his own findings.  (AR 23).  For example: (1) a July 2015 treatment note indicated  a

20   number of normal findings, including that Plaintiff had full range of motion of the spine

21   and pelvis with paraspinal tenderness (AR 659); (2) a December 2015 treatment note

22   indicated a number of normal findings, including full range of motion, normal strength,

23   normal neurologic findings, and that Plaintiff complained of joint pain "on and off" (AR

24   653); (3) a February 2016 treatment note indicated normal findings, including normal

-11-

gait, full range of motion except left upper extremity, normal alignment, and Plaintiff reporting that she responded well to Norco (AR 651); and (4) an August 2016 treatment note indicated normal gait, strength and range of motion, with some pain on movement, but that pain was "[r]elieved with intake of Norco" (AR 702).  The ALJ properly relied on this conflict in discounting the opinion.  See Ford, 950 F.3d at 1154 (conflict between treating physician's opinion and his own notes is a specific and legitimate reason for rejecting it); Wilhelm v. Comm'r Soc. Sec. Admin., 597 F. App'x 425, 425 (9th Cir. 2015) (ALJ properly rejected doctor's opinion because it contradicted her own treatment notes); Shavin v. Comm'r Soc. Sec. Admin., 488 F. App'x 223, 224 (9th Cir. 2012) (ALJ may reject physician's opinion by "noting legitimate inconsistencies and ambiguities in the doctor's analysis or conflicting lab test results, reports, or testimony" (internal citation omitted)).

Second, the ALJ properly found that Dr. Malabanan's opinion of total disability conflicted with the findings and opinions of the other doctors that Plaintiff could work, including that of Dr. Afra, the State Agency, and Dr. Maxwell.  See Ford, 950 F.3d at 1156 (conflicting medical professional findings a valid consideration in discounting an opinion); Batson v. Comm'r Soc. Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) ("[I]t was permissible for the ALJ to give [opinions] minimal evidentiary weight, in light of . . . opinions and observations of other doctors.").  The opinions of these other examining, reviewing, and testifying doctors is substantial evidence supporting the ALJ's decision. See e.g., Saelee v. Chater, 94 F.3d 520, 522 (9th Cir. 1996) (per curiam) ("We have held that the findings of a nontreating, nonexamining physician can amount to substantial evidence, so long as other evidence in the record supports those findings.").

Plaintiff takes issue with the ALJ discounting Dr. Malabanan's opinion based on treatment history, which Plaintiff correctly points out began in 2013.  (AR 708).  But even if the ALJ erred by relying on this reason, any error is harmless in light of the other valid reasons.  See Baker v. Berryhill, 720 F. App'x 352, 355 (9th Cir. 2017) (ALJ's error in providing legally invalid reasons for discounting examining opinion harmless because ALJ provided other proper reasons, including inconsistencies between opinion and doctor's own evidence and other medical evidence in the record); Molina, 674 F.3d at 1115.

Plaintiff also faults the ALJ for, earlier in the decision at step two, discounting Dr. Malabanan's opinion because he took Plaintiff's psychological condition into account even though he was a general practitioner.  [Dkt. 26, p. 5 (citing AR 20)].  Assuming without deciding that the ALJ erred in making that observation, see Sprague v. Bowen, 812 F.2d 1226, 1231-32 (9th Cir. 1987) ("it is well established that primary care physicians . . . identify and treat the majority of Americans' psychiatric disorders"), the error is also harmless.  Dr. Malabanan's opinion indicated Plaintiff's depression affected her physical condition (AR 709), and the ALJ essentially credited it by specifically finding "depressive disorder" to be one of Plaintiff's severe impairments (AR 18).  Accordingly, any error in the ALJ's assessment of Dr. Malabanan's opinion at step two was harmless because the "gatekeeping" function of that step was resolved in Plaintiff's favor.  See Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007) (the step-two finding is "merely a threshold determination" that "only raises a prima facie case of a disability"); Burch, 400 F.3d at 682 (concluding that any error ALJ committed at step two was harmless where the step was resolved in claimant's favor).

Accordingly, the Court concludes that the ALJ provided "specific and legitimate" reasons based on substantial evidence for discounting Plaintiff's treating physician's opinion, and any error in providing other reasons was harmless.

### D.  **The ALJ Properly Assessed Plaintiff's RFC**

Plaintiff next contends that her RFC is not supported by substantial evidence because the ALJ failed to properly consider her mental limitations.  Specifically, she contends ALJ's decision was internally inconsistent because she concluded at step three that Plaintiff had moderate limitations in concentrating, persisting, or maintaining pace and mild limitations in interacting with others, but in the RFC found that Plaintiff could perform simple, repetitive tasks, perform detailed or complex tasks frequently, and occasionally interact with co-workers, supervisors, and/or the public.  [Dkt. No. 26, 10-12, 14-15].

### 1.  Legal Standard for Consideration of Impairments in the Disability Evaluation

At step three of the sequential evaluation, the ALJ determines whether the claimant's impairment or combination of impairments is of a severity to meet or medically equal a listed impairment.  Before turning to step four, the ALJ fashions the claimant's RFC.  A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision.  Bayliss, 427 F.3d at 1217.  In making an RFC determination, the ALJ may consider those limitations for which there is support in the record and need not consider properly rejected evidence or subjective complaints.  Id.  The Court must consider the ALJ's decision in the context of "the entire record," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be

1   upheld." <u>Ryan</u>, 528 F.3d at 1198 (citation omitted).  An ALJ is not obligated to discuss

2   "every piece of evidence" when interpreting the evidence and developing the record.  <u>See</u>

3   <u>Howard ex rel. Wolff v. Barnhart</u>, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted).

4   Similarly, an ALJ is also not obligated to discuss every word of an opinion or include

5   limitations not actually assessed by the medical professional.  <u>See</u> <u>Fox v. Berryhill</u>, 2017

6   WL 3197215, *5 (C.D. Cal. July 27, 2017); <u>Howard</u>, 341 F.3d at 1012.

7              2.   <u>The ALJ Properly Considered Plaintiff's Mental Impairments.</u>

8          At step-three the ALJ considered Plaintiff's mental impairments under the four

9   functional areas known as the "paragraph B" criteria.  (AR 21-22).  The ALJ found

10  Plaintiff was mildly limited in understanding, remembering, or applying information.

11  (AR 21).  Regarding her ability to interact with others, the ALJ found Plaintiff had mild

12  limitation.  (<u>Id.</u>)  The ALJ found Plaintiff had moderate limitation the area of

13  concentrating, persisting, or maintaining pace.  (<u>Id.</u>)  Finally, the ALJ found Plaintiff

14  had mild limitation in the area of adapting or managing oneself.  (<u>Id.</u>)  The ALJ

15  concluded that because Plaintiff's mental impairments did not cause at least two

16  "marked" limitations, or one "extreme" limitation, the "paragraph B" criteria were not

17  satisfied.  (AR 22).

18         The ALJ then explained that: "[t]he limitations identified in the 'paragraph B'

19  criteria are not a[n RFC] assessment but are used to rate the severity of mental

20  impairments at steps 2 and 3 of the sequential evaluation process.  The mental [RFC]

21  assessment used at steps 4 and 5 . . . requires a more detailed assessment."  (AR 23).

22  The ALJ concluded by stating that "the following [RFC] reflects the degree of limitation

23  the undersigned has found in the 'paragraph B' mental function analysis" and then

24  assessed Plaintiff's RFC.  (<u>Id.</u>)

As mentioned above, in addition to limiting Plaintiff in the RFC to a restricted range of sedentary work, the ALJ found Plaintiff was limited to "simple, repetitive tasks, performing detailed or complex tasks no more than frequently, and having occasional interactions with co-workers, supervisors and/or the public in a work setting." (AR 22). The ALJ specifically stated that that she considered "all symptoms" in fashioning the RFC. (Id.) In doing so, the ALJ considered Plaintiff's subjective statements and testimony about her mental health therapy, her generally normal performance upon mental status testing, and the fact that no treating or examining medical source assessed her as precluded from sustaining work activity due to any mental health issues. (AR 23-24).

Plaintiff has failed to show how this exhaustive consideration of her mental health issues was in error. As mentioned, the ALJ found depression to be a severe impairment at step two, assessed Plaintiff's mental functioning at step three and acknowledged that the "paragraph B" criteria are separate findings from the RFC, and then considered all of Plaintiff's mental health issues in assessing her RFC. (AR 22). Accordingly, Plaintiff has not shown the ALJ failed to consider her mental impairments in assessing the RFC.

To the extent Plaintiff also contends that the ALJ should have included even more restrictive limitations in the RFC, Plaintiff has failed demonstrate she is entitled to relief. As noted by the ALJ, she has not pointed to any opinion precluding her from all work activity on account of mental health issues. (AR 24, 52-53); see, e.g., Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993) (substantial evidence supported finding claimant, although impaired, was not disabled and could perform work because "[n]one of the doctors who examined [claimant] expressed the opinion that he was totally

disabled").  Further, she has not explained how the single "moderate" finding in the paragraph B analysis or any of her other mental limitations are sufficiently restrictive to ultimately preclude her from performing work.  See, e.g., Hoopai, 499 F.3d at 1077 (explaining the Ninth Circuit has not "held mild or moderate depression to be a sufficiently severe non-exertional limitation that significantly limits a claimant's ability to do work beyond the exertional limitation."); Shapiro v. Berryhill, 2020 WL 836830, at *1, 6 (D. Nev. Feb. 20, 2020) (RFC that included restriction to simple, non-detailed, non-complex work, with occasional interaction with co-workers and supervisors but never the public, adequately accounted for the moderate findings in two paragraph B criteria); Ball v. Colvin, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); Sisco v. Colvin, 2014 WL 2859187, at *7-8 (N.D. Cal. June 20, 2014) (ALJ not required to include in RFC assessment mental impairment that imposed "no significant functional limitations").  Accordingly, for the reasons outlined above, the Court finds no error in fashioning the RFC and concludes that the ALJ duly considered Plaintiff's mental impairments in the decision.

### E.  The ALJ Properly Evaluated Plaintiff's Testimony

Plaintiff asserts that the ALJ improperly assessed her subjective testimony and complaints.  [Dkt. No. 26, 15-18, 21].

#### 1.  Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.  Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003).  Once the claimant meets that burden, an ALJ can

reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Id.  To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. See Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

2.   <u>The ALJ provided Clear and Convincing Reasons Supported by</u>
<u>Substantial Evidence, and Any Error in Other Reasons is Harmless</u>

Having carefully reviewed the record, the Court finds that the ALJ provided

specific clear and convincing reasons for discounting Plaintiff's subjective complaints.[9]

First, although a lack of, or inconsistency with, objective medical evidence cannot be the

sole reason for partially discounting a claimant's testimony, it can be one of several

factors used in evaluating subjective complaints. See <u>Burch</u>, 400 F.3d at 681 ("Although

lack of medical evidence cannot form the sole basis for discounting pain testimony, it is

a factor that the ALJ can consider in his credibility analysis."); <u>Rollins v. Massanari</u>, 261

F.3d 853, 857 (9th Cir. 2001).  Here, as explained above, the mild objective medical

findings listed above in Dr. Malabanan's notes, and the findings by Dr. Afra, the State

Agency, and the medical experts, conflict with Plaintiff's extreme subjective complaints.

The ALJ's reliance on this factor was supported by the record and valid.  (AR 23-24).

The ALJ properly relied on this factor.  <u>See</u> <u>Willens v. Berryhill</u>, 709 F. App'x 867, 868

(9th Cir. 2017) (analysis of subjective complaints upheld in part because "no physician

made an assessment that [claimant] was disabled"); <u>Matthews</u>, 10 F.3d at 680.

Second, the ALJ concluded that Plaintiff answered questions during the hearing

alertly and appropriately, and her thoughts did not seem to wander.  (AR 24).  This, of

course, is difficult to review on a cold appellate record, but it is nonetheless supported

by the transcript.  Although some of Plaintiff's initial answers were not detailed, it

appears to be the result of a language barrier.  However, the ALJ remedied that during

---

[9] The ALJ did not make a finding of malingering in her opinion.  Thus, in discounting
Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and
convincing reasons.  <u>See</u> <u>Benton</u>, 331 F.3d at 1040; <u>Brown-Hunter</u>, 806 F.3d at 489.

the hearing by incorporating a translator (AR 43-44), after which Plaintiff appeared to have no difficulty answering questions.  The ALJ was entitled to rely on her own observations at the hearing in assessing Plaintiff's credibility, and even if the transcript is susceptible to more than one rational interpretation, the decision must be upheld.  See Ryan, 528 F.3d at 1198; Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001) (while an ALJ may not rely on her own observations of the claimant at the hearing "as the sole reason for rejecting the claimant's complaints," the ALJ may use "ordinary techniques of credibility evaluation," including her observations of the claimant's presentation at the hearing, to evaluate the credibility of subjective allegations); Shapiro, 2020 WL 836830 at *6 (declining to "second-guess" ALJ's decision because it noted minimal mental-health treatment and claimant's testimony at the hearing demonstrated she was able to concentrate well enough to answer the ALJ's questions).

Third, the ALJ properly relied on inconsistencies in Plaintiff's testimony.  (AR 24).  The ALJ specifically noted Plaintiff's testimony that she does not go to her son's activities because she experiences anxiety when she's around a lot of people, causing her to cry and feel pressure.  (AR 48).  But, upon further questioning, she said that if someone is available to take her, "[o]f course" she will go.  (AR 48).  The ALJ properly relied on this factor.  See Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (an ALJ may consider a variety of factors in weighing a claimant's believability, including ordinary techniques of credibility evaluation, prior inconsistent statements, and testimony by the claimant that "appears less than candid"); Colter v. Colvin, 554 F. App'x 594, 596 (9th Cir. 2014) (ALJ properly discounted claimant's credibility based on her own admissions and inconsistency between her testimony and descriptions of her activities and abilities).

Plaintiff challenges other reasons cited by the ALJ, including her reliance on Plaintiff's treatment and her activities of daily living such as preparing meals, personal care, and driving [Dkt. No. 26, pp. 17, 22], but the Court need not decide whether those reasons were proper.  Even assuming, without deciding, the ALJ may have erred in other aspects of her assessment of Plaintiff's testimony, any error would be harmless considering the other valid reasons for rejecting the testimony.  See Reyes v. Berryhill, 716 F. App'x 714, 714 (9th Cir. Mar. 28, 2018) (where ALJ provided valid reasons for finding claimant's testimony not entirely credible, "[a]ny error in other reasons provided by the ALJ was harmless"); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (when ALJ provides specific reasons for discounting claimant's credibility, decision may be upheld even if certain reasons were invalid as long as "remaining reasoning and ultimate credibility determination" were supported by substantial evidence (emphasis omitted)); Strutz v. Colvin, 2015 WL 4727459, at *7 (D. Or. Aug. 10, 2015) (upholding credibility finding because ALJ provided at least one valid reason to discount claimant's testimony).

## V.   **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.


DATE: April 22, 2020


          /s/ Autumn D. Spaeth
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge